The PEOPLE of the State of
Colorado, Complainant,

v.

Roger Bruce LARSEN,
Attorney–Respondent.

No. 90SA256.

Supreme Court of Colorado,
En Banc.

April 15, 1991.

Linda Donnelly, Disciplinary Counsel, George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Dennis W. Hartley, Colorado Springs, for attorney-respondent.

Justice MULLARKEY delivered the Opinion of the Court.

The respondent in this attorney disciplinary proceeding, Roger Bruce Larsen, is the former district attorney of the Eleventh Judicial District in Fremont County, and this case involves misconduct which occurred while he held that office. The hearing panel of the Supreme Court Grievance Committee accepted the recommendation of the hearing board that the respondent be suspended from the practice of law for a year and a day and be assessed the cost of the proceeding. We rejected the committee's recommended sanction and issued a rule to show cause why a more severe sanction, including disbarment, should not be imposed. After receiving and taking into consideration the responses of the respondent and the disciplinary counsel, we now order that the respondent be suspended for three years and pay the cost of these proceedings.

I

The respondent was admitted to the bar of this court on October 17, 1977, is registered as an attorney upon this court's official records, and is subject to the disciplinary jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b).

The respondent and the deputy disciplinary counsel entered into a stipulation which was submitted to the hearing board. In addition, the respondent and his witnesses testified before the board at a hearing concerning mitigation of the charges admitted. The facts found by the hearing board are as follows.

The respondent married Deborah Larsen, whom he knew to be an occasional user of marihuana, sometime before he became the district attorney for the Eleventh Judicial District in 1985. His wife was a long-time friend of Susie Hess, who also used marihuana and whom the respondent hired as a receptionist after he became the district attorney. When he hired Hess, and afterward, the respondent knew that his wife and Hess continued to use marihuana although he was not involved in such drug

use. Larsen confronted his wife several times and tried unsuccessfully to convince her to stop using illegal drugs. The respondent did not attempt to enforce the criminal laws of Colorado against his wife or Hess.

On October 5, 1988, Hess asked the respondent to come to her house to discuss with her a personal financial problem. In the course of their conversation, Hess told the respondent that she had obtained some marihuana at his wife's request. Larsen paid Hess $40.00 for less than one-half ounce of marihuana, and subsequently was arrested. The respondent testified that he purchased the marihuana to take it to his wife and confront her with her continuing problem. As the hearing board noted, this explanation is not credible.

In the stipulation, the respondent admitted that, on or about October 5, 1988, while he was district attorney, he possessed less than one ounce of marihuana, contrary to section 18–18–106(1), 8B C.R.S. (1986), a class 2 petty offense.

The respondent also admitted that in May 1987, while he was district attorney, he did not turn in or otherwise prosecute Hess, his employee, in order to obtain a benefit for himself or his wife, which was the possession of less than one ounce of marihuana, in violation of section 18–8–404(1), 8B C.R.S. (1986) (a class 2 misdemeanor).[1] Finally, the respondent stipulated that in September and October 1988, while he was the district attorney, he did not turn in or otherwise prosecute Hess in order to obtain a benefit for himself or his wife, the possession of less than one ounce of marihuana, contrary to section 18–8–404(1). He was suspended as district attorney after his arrest and lost his position in the November 1988 general election.

On January 6, 1989, the respondent pled guilty to these three offenses, paid a $2,000 fine, spent ten days in the Fremont County jail, and more than satisfied the community service requirement of his sentence by performing paralegal work for Pikes Peak Legal Services in El Paso County. The respondent voluntarily withdrew from the practice of law sometime after his arrest although he apparently did accept some cases in 1989.

The respondent stipulated, and we agree, that his conduct violated DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice); and DR 1–102(A)(6) (a lawyer shall not engage in any conduct that adversely reflects on his fitness to practice law); as well as DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule); C.R.C.P. 241.-6(1) (a violation of a provision of Code of Professional Responsibility is grounds for discipline); and C.R.C.P. 241.6(5) (any act or omission which violates the criminal laws of any state or the United States constitutes grounds for discipline).

## II

The hearing panel accepted the hearing board's recommendation that the respondent be suspended from the practice of law for one year and one day. The grievance committee's recommendation, however, is advisory only, and this court must determine the appropriate discipline. C.R.C.P. 241.15(c); *People v. Flores*, 772 P.2d 610, 614 (Colo.1989); *People v. Brown*, 726 P.2d 638, 640–41 (Colo.1986).

Generally, we find guidance in the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), which provides a theoretical framework for imposing sanctions in a disciplinary case based on (1) the ethical duty

---

1. Section 18–8–404, 8B C.R.S. (1986), provides:
   **18–8–404. First degree official misconduct.** (1) A public servant commits first degree official misconduct if, with intent to obtain a benefit for himself or maliciously to cause harm to another, he knowingly:
   (a) Commits an act relating to his office but constituting an unauthorized exercise of his official function; or

(b) Refrains from performing a duty imposed upon him by law; or
   (c) Violates any statute or lawfully adopted rule or regulation relating to his office.
   (2) First degree official misconduct is a class 2 misdemeanor.

violated, (2) the lawyer's mental state, (3) the injury caused and (4) the existence of aggravating or mitigating factors. *ABA Standard* 3.0. We will consider each issue in turn.

The duties which the respondent violated are his duties to the general public. We expect all attorneys to comply with the law and our rules provide that commission of a crime is a ground for discipline. *See* C.R. C.P. 241.6(5). The respondent, however, owed a higher duty to the public because he was a governmental official holding the constitutionally created office of district attorney. Colo. Const. art. VI, § 13. He was entrusted with the responsibility for enforcing the criminal law in his district by prosecuting alleged offenders. Two of the three crimes to which the respondent pled guilty were first degree official misconduct and relate directly to his failure to fulfill his responsibilities as a public official.

With respect to the respondent's state of mind, there can be no question that the respondent acted with knowledge of his wrongdoing and his guilty pleas reflect that fact. He also acted from a misguided intention to protect his wife and her friend. Deborah Larsen asserts that she resumed smoking marihuana in an effort to self medicate for depression following the birth of their daughter in 1986. She acknowledges that she rebuffed repeated requests from her husband that she cease using drugs. Finally, she informs us that, as of March 1991, she has received psychological counseling since her husband's arrest and her drug use has ended. We agree with the grievance committee that the respondent had a continuing ethical duty to ensure that his wife and his employee did not engage in criminal activity or, alternatively, to resign his office.

The injury caused by the respondent's misconduct is the undermining of public respect for the law and the fair, unbiased administration of the criminal justice system. As a community, Colorado reposes great discretion in its district attorneys to charge and prosecute violations of the criminal law. The respondent's abuse of his power is very serious misconduct. We cannot have two sets of standards, one which applies to the friends and relatives of prosecutors and another, higher standard which applies to all other persons. As a court, we have spoken out strongly against attorney misconduct by public officials.

We have two recent precedents concerning the discipline of elected district attorneys for crimes committed while in office. In *People v. Tucker*, 676 P.2d 680 (Colo. 1983), the respondent was convicted of two crimes committed while he was the elected district attorney: second degree official misconduct (a petty offense) and failure to disclose a conflict of interest (a misdemeanor). The conduct underlying his criminal convictions involved improperly billing county governments for expenses incurred by the district attorney and his companion. The respondent also admitted that he lied at his criminal trial when he denied knowing the whereabouts of his companion and that he had arranged for his companion to avoid the trial by flying to Hawaii under an assumed name. We approved the grievance committee's recommendation that the respondent be suspended from the practice of law for one year and one day. The opinion notes that the respondent had received a prior admonition for professional misconduct while he was district attorney and that he had been suspended on an interim basis for over five years when the case was decided. *Id.* at 680–81.

We disbarred the respondent in *People v. Brown*, 726 P.2d 638 (Colo.1986), who was convicted of the following three crimes which he committed while he was the elected district attorney: second-degree forgery (class 4 felony), abuse of public records (class 1 misdemeanor), and computer crime (class 4 felony). Brown used his official position to have his driving record altered by deleting two traffic tickets. He had no prior disciplinary action. *Id.* at 640–41. We also have disciplined deputy district attorneys in two other recent cases. *See People v. Sharpe*, 781 P.2d 659 (Colo.1989) (deputy district attorney publicly censured for his use of racial epithet to describe defendant); *People v. Unruh*, 621 P.2d 948 (Colo.1980) (deputy district attorney disbarred for purchase and use of cocaine,

conspiracy to import and distribute narcotics, and agreement to hide fugitive from justice).

The fourth issue in determining sanctions in an attorney discipline case is the existence of aggravating or mitigating factors. The aggravating factor in this case is Larsen's pattern of misconduct. *ABA Standard* 9.22(c). Several mitigating factors exist: absence of a prior disciplinary record, *ABA Standard* 9.32(a); full cooperation with the grievance committee, *ABA Standard* 9.32(e); good character or reputation, *ABA Standard* 9.32(g); interim rehabilitation, *ABA Standard* 9.32(j); and remorse, *ABA Standard* 9.32(*l*).

All three cases involving the discipline of district attorneys for crimes committed while in office, *Tucker, Brown,* and the present case, came before us with a presumption under *ABA Standard* 5.22 that disbarment was appropriate because the district attorney knowingly misused his position to obtain a significant benefit for himself or another. All involved the aggravating factors of a pattern of misconduct or multiple offenses. *ABA Standard* 9.22(c), (d). *Tucker* involved the additional aggravator of prior discipline but his suspension for one year and one day rather than a longer term was justified, at least in part, by the fact that the respondent already had been suspended for over five years. That consideration is not present here because there is no court-ordered interim suspension. In this case, we conclude that the respondent should be suspended for three years, our most severe sanction short of disbarment. C.R.C.P. 241.7(2).

We impose the three year suspension rather than disbarment for two reasons. First, as the Disciplinary Counsel observed in arguing in support of suspension for one year and one day, the crimes committed by Larsen are less serious than those committed in *Brown*.[2] Moreover, as mentioned

above, *supra* p. 5, Larsen has demonstrated substantial mitigation.

The grievance committee found that the respondent "has been exemplary in rectifying the impact of his misconduct and [meeting] his obligation to restore the reputation of the legal profession in the eyes of the public by his public service at Legal Services." It credited the testimony of several witnesses regarding the respondent's good reputation and professional competence. Larsen admits that he "made a terrible mistake in judgment" but asserts that he "has taken steps and corrective measures to see that this type of activity never happens again."

We note that the respondent performed 450 hours of community service as a paralegal which substantially exceeded the 300 hours required as a condition of probation. His supervisor at the Pikes Peak Legal Services, where he now works as a paralegal, described his work as "superior." Although his probation has been completed, the respondent continues to volunteer his time and estimates that he contributed an additional 100 hours.[3]

### III

Accordingly, it is hereby ordered that Roger Bruce Larsen be suspended from the practice of law for three years, effective immediately upon the issuance of this opinion. C.R.C.P. 241.21(a). Larsen shall not be reinstated until after he has complied with C.R.C.P. 241.22(c) & (d). We assess him the costs of these proceedings in the amount of $241.79. The costs are payable within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202–5435.

VOLLACK, J., dissents, and ERICKSON and LOHR, JJ., join in the dissent.

---

**2.** We also note that in *Unruh*, where we ordered the deputy district attorney disbarred, the deputy district attorney conceded that he committed offenses much more serious than those involved here. *Unruh*, 621 P.2d at 949.

**3.** Respondent's interim rehabilitation and remorse, especially as evidenced by his voluntary extension of community service, also distinguish this case from *Brown* and *Unruh*.

Justice VOLLACK dissenting:

I respectfully dissent from the majority's decision to suspend the respondent for three years. In my opinion, disbarment is warranted by the respondent's breach of trust placed in him as a public official and prosecutor.

The respondent entered into a written stipulation of facts, establishing by clear and convincing evidence that he violated C.R.C.P. 241.6(1) and (5)[1] and the Code of Professional Responsibility, DR 1–102(A)(1), (5), and (6).[2]

The respondent admitted that at the time he took the oath of office as district attorney he knew his wife and her long-time friend, Susie Hess (Hess), were users of marijuana. As district attorney in 1985, he hired Hess to work for the District Attorney's Office in Fremont County. Respondent admits that he knew his wife and his employee Hess continued to obtain and use marijuana, and that he took no action to enforce the laws he was sworn to uphold. In October 1988, respondent met Hess at her residence and purchased less than one-half ounce of marijuana for his wife. The respondent was subsequently arrested and charged with criminal conduct. The respondent entered into a disposition and pleaded guilty to two Class II misdemeanor counts of official misconduct and one count of possession of marijuana, less than one ounce, a petty offense.

### I.

In determining appropriate sanctions for unethical conduct, we normally apply the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986). Standard 5.2—Violation of Duties Owed to the Public, and Failure to Maintain the Public Trust—is appropriate in cases involving public officials engaged in conduct that is prejudicial to the administration of justice. Standard 5.21 provides:

> Disbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses the position with the intent to obtain a significant benefit or advantage for himself or another, or with the intent to cause serious or potentially serious injury to a party or to the integrity of the legal process.

Standard 5.22 provides:

> Suspension is generally appropriate when a lawyer in an official or governmental position knowingly fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process.

The ABA *Standards* set out four factors to be considered when imposing sanctions.[3] The misconduct stipulated to by the respondent establishes a pattern of knowing misuse of his position as district attorney to benefit himself and his wife by continuing to aid and abet criminal activity. This conduct seriously injured the integrity of the legal profession, warranting disbarment

---

**1.** **Rule 241.6 Grounds for Discipline**

Misconduct by a lawyer, individually or in concert with others, including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship:

(1) Any act or omission which violates the provisions of the Code of Professional Responsibility;

. . . .

(5) Any act or omission which violates the criminal laws of this state or any other state, or of the United States; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings, and provided further that acquittal in a criminal proceeding shall not necessarily bar disciplinary action[.]

**2.** **DR 1–102 Misconduct.**

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

**3.** The four factors to be considered, as set out in Standard 3.0, are:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating and mitigating factors.

under ABA Standard 5.21 for misuse of position, rather than suspension under ABA Standard 5.22 for failure to follow proper procedures or rules.

## II.

We have held that lawyers who hold the position of district attorney assume responsibilities beyond those of other attorneys, and that when their misconduct damages the confidence of the public in the integrity of the legal profession and judicial system, disbarment was appropriate rather than the recommended three-year suspension. *People v. Brown,* 726 P.2d 638 (Colo.1986). In this case, the majority concludes that the crimes committed by Larsen are less serious than those committed in *Brown.*

I disagree. I find the actions of the respondent more grievous than in *Brown.* In *Brown,* the acts were one-time incidents, occurring after he had assumed public office. Here, the respondent's acts were a series of violations occurring prior to and after his taking the oath of office to enforce the criminal laws of the state. The respondent knew of the illegal acts of his wife's and her friend's marijuana use prior to his taking the oath of office as district attorney. With this knowledge, he assumed the office of district attorney and, for three years, knowingly permitted the criminal activity to continue—activity which he observed, participated in, and aided—until he was arrested in October 1988. Of the mitigating circumstances cited by the majority, only one, in my opinion, could be considered mitigation prior to his arrest; that is the absence of any prior disciplinary record, which was also true in the *Brown* case. Cooperation with the Grievance Committee and performing public service as part of his probation sentence, after the truth is known, does not in my opinion constitute mitigating circumstances justifying the sanction imposed by the majority.

The majority notes the aggravating factor in this case is Larsen's pattern of misconduct, *ABA* Standard 9.22(c). Maj. op. at 1267. I agree, but find that he knew of the conduct before he took the oath of office and did nothing to correct it. This pattern of conduct alone is more grievous than the single episode in *Brown.*

The respondent's condonation of this criminal activity after taking the oath of office of district attorney demeans the integrity of the legal system and the public confidence in the justice system. It is not too much to say that a lawyer who holds the position of district attorney, with the substantial powers of that office, assumes responsibilities beyond those of other lawyers and must be held to the highest standard of conduct. *Brown,* 726 P.2d at 641.

I cannot agree that suspension for three years is appropriate in this case. I believe a public official's abuse of power and office warrants disbarment. Anything less erodes the public confidence in the integrity of the legal profession and the justice system.

I am authorized to say that Justice ERICKSON and Justice LOHR join in this dissent.