In the Matter of Attorney D.,
Attorney–Respondent.

No. 01SA361.

Supreme Court of Colorado,
En Banc.

Oct. 15, 2002.

As Modified on Denial of Rehearing
Nov.18, 2002.

Charles Mortimer Jr., Attorney Regulation Counsel Denver, Colorado, for Petitioner.

Phillip S. Figa Englewood, Colorado, for Attorney–Respondent.

Steven Silvern, Denver, Colorado, Pro Se.

Justice COATS delivered the Opinion of the Court.

The Attorney Regulation Counsel petitioned for relief pursuant to C.A.R. 21 from an order of the Presiding Disciplinary Judge, authorizing discovery by the respondent in a disciplinary proceeding. The order of the PDJ came in response to a motion seeking protection from a subpoena duces tecum, commanding the attorney who reported the respondent's conduct to appear for a deposition and produce a substantial number of documents. After hearing the objections of both the Attorney Regulation Counsel and the reporting attorney, the PDJ partially

granted the Motion for Protective Orders, substantially limiting the subpoena duces tecum on the grounds that it sought the disclosure of privileged material and information not likely to lead to admissible evidence. He nevertheless permitted the deposition of the reporting attorney to go forward and ordered the production of a number of the subpoenaed documents, which he considered to be potentially relevant to a standard of care for arbitral disclosures and the statute of limitations on disciplinary proceedings.

We issued a rule to show cause. Because we find that the Presiding Disciplinary Judge misperceived the relevance of the opinions and prior conduct of the reporting attorney with respect to arbitral disclosures, as well as the relevance of the point in time at which the reporting attorney became aware of the respondent's conduct, the rule is made absolute and the matter is remanded for reconsideration of the Motion for Protective Orders.

## I. PROCEDURAL HISTORY

The subpoena duces tecum and Motion for Protective Orders at issue here grow out of a disciplinary proceeding in which the respondent is charged with violations of RPC 8.4(c). The complaint, filed by the Attorney Regulation Counsel pursuant to C.R.C.P. 251.14, contains two claims. The first alleges that the respondent violated RPC 8.4 by engaging in conduct involving dishonesty, misrepresentation, deceit, and fraud, by signing an oath in connection with the respondent's appointment by State Farm Insurance Company as an arbitrator in 1992. The oath verified the absence of existing or past financial, business, or professional relationships with any of the parties or their attorneys that would affect the respondent's impartiality or create an appearance of partiality or bias. The second claim alleges violations of RPC 8.4 in three instances in 1992 and 1993 in which the respondent failed to disclose his ongoing relationship with State Farm as an expert witness and arbitrator to the claimants in arbitrations over which he presided.

The Attorney Regulation Counsel filed the complaint after receiving information from an attorney involved in civil litigation against the respondent, in which information about the respondent's arbitral practices on behalf of State Farm had been discovered and collected. According to his representations to the Presiding Disciplinary Judge and this court, the reporting attorney informed the Attorney Regulation Counsel of the results of his investigation only after being contacted by an assistant disciplinary counsel[1] and after being admonished of his duty to report professional misconduct pursuant to RPC 8.3. He also represented that although he cooperated with the disciplinary counsel, he acted pursuant to a formal subpoena, in compliance with the terms of a settlement agreement between his client and the respondent.

In addition to a subpoena for the reporting attorney's deposition, the respondent served him with a subpoena duces tecum, ordering the production of numerous records, documents, files, articles, and lists of cases and files, which included virtually all cases related to his service as an expert witness or arbitrator and all files reflecting information gathered about State Farm.[2] In response, the reporting attorney filed a Motion for a Pro-

---

1. Prior to 1998, the official responsible for prosecuting ethical violations was designated the "Disciplinary Counsel." *See* C.R.C.P. 241.4, 12 C.R.S. (1997). Since the 1998 amendments to the system, this body is now referred to as "Attorney Regulation Counsel." *See* C.R.C.P. 251.3.

2. The subpoena duces tecum actually demanded:
 1) All records, documents, and files related to your service as an expert witness in any claim, arbitration, or litigation, including but not limited to PIP, UM/UIM., or mandatory arbitration matters.
 2) All records, documents, and files related to your service as an arbitrator in any claim, arbitration, or litigation, including but not limited to PIP, UM/UIM., or mandatory arbitration matters.

 3) All records, documents, and files in any claim, arbitration, or litigation, including but not limited to PIP, UM/UIM, or mandatory arbitration in which you were appointed an arbitrator.
 4) All records, documents, and files in which you selected or appointed an expert witness in the area of insurance, insurance coverage, or bad faith.
 5) All records, documents, and files in which you selected an attorney as an expert witness in any matter or area, or on any subject, including but not limited to attorney fees and costs in PIP or UM/UIM matters.
 6) Any documents reflecting your disclosures to parties in matters in which you were engaged as a testifying expert witness.

tective Order, in which the Attorney Regulation Counsel joined. The motion was immediately heard and partially granted.

In his ruling, the PDJ found portions of the subpoenaed material to be either irrelevant or privileged, and portions of it to impermissibly require the generation of lists that did not already exist. Nevertheless, the PDJ found some of the requested documents to be potentially relevant to the statute of limitations, which makes reference to the point in time at which the complaining witness discovered or reasonably should have discovered the misconduct,[3] and he found some of the requested documents potentially relevant to what he referred to as the "standard of care or standard of practice" for arbitral disclosures, on the grounds that such a standard might relate to a mitigating factor. The PDJ therefore ordered that the reporting attorney submit to questioning concerning these two areas, and the PDJ made himself available to resolve individual objections as they arose.

Although the deposition apparently began, it was not completed, and the Attorney Regulation Counsel petitioned for relief from this court. We stayed the order and issued a rule to show cause. The respondent in the underlying disciplinary proceeding responded to the order to show cause, and both the Attorney Regulation Counsel and the reporting attorney replied.

## II. C.A.R. 21 AND C.R.C.P. 251.1(d)

■ Exercise of the supreme court's original jurisdiction is entirely within its discretion. *People v. District Court,* 869 P.2d 1281, 1285 (Colo.1994). Relief pursuant to C.A.R. 21 is appropriate to correct an abuse of discretion by a lower court where no other remedy would be adequate. *Id.; People v. District Court,* 664 P.2d 247, 251 (Colo.1983). Although challenges to discovery rulings are typically the subject of an appeal, *People v. District Court,* 894 P.2d 739, 742 (Colo.1995), it can be appropriate to review discovery orders interlocutorily, by way of original proceeding, where the impact of the ruling would be substantial and incurable at a later time. *See People v. District Court,* 664 P.2d at 251; *see also People v. District Court,* 898 P.2d 1058, 1060 (Colo.1995); *People v. District Court,* 869 P.2d at 1285.

■ For a number of reasons, it is particularly appropriate to review this disciplinary discovery order at this time. The newness of the Rules Regarding Attorney Discipline and Disability Proceedings and the substantial changes they have effected in existing procedures raise significant questions about the discoverability of the practices and opinions of an attorney reporting misconduct. Even more than usual, the need to protect against unnecessary invasion of privacy and burdensome or oppressive discovery of a non-party is important in this context to avoid creating unnecessary disincentives to the reporting of attorney misconduct. *See In the Matter of Smith,* 989 P.2d 165, 172 (Colo.1999). The express reservation in C.R.C.P. 251.1(d) of authority to review any determination made

---

7) All articles (including drafts) you have written for CTLA publications or any other legal publication pertaining to State Farm Insurance Company and all documents you reviewed or considered in the preparation of such articles.

8) Copies of all requests for disciplinary investigation or civil lawsuits filed against you, your firm, or any former professional colleague with whom you have practiced law.

9) A list of all cases or files in which you or other firm members or employees have served as an expert witness or arbitrator reflecting:
 (a) Date of appointment.
 (b) Compensation earned.
 (c) Person making the appointment.
 (d) Role served by the appointee.
 (e) Litigants or parties involved.
 (f) Identity of other arbitrators or experts involved.
 (g) Identity of all counsel involved.

10) A list of cases or files in which you appointed another attorney as an expert witness or arbitrator reflecting:
 (a) Date of appointment.
 (b) Person appointed.
 (c) Compensation paid.
 (d) Role served by the appointee.
 (e) Litigants or parties involved.
 (f) Identity of other arbitrators or experts involved.
 (g) Identity of all counsel involved.

11) Your files reflecting information you have gathered about State Farm Insurance Company, its claim-paying practices, and the policies, practices, and procedures of the attorneys it has hired.

3. *See* C.R.C.P. 251.32(i).

in the course of a disciplinary proceeding is indicative of the unique role of the supreme court in supervising such proceedings.

## III. C.R.C.P. 251.18(f)(4): DISCOVERY IN DISCIPLINARY PROCEEDINGS

Although discovery in disciplinary proceedings is governed by C.R.C.P. 251.18 rather than C.R.C.P. 16 and 26, *see* C.R.C.P. 251.18(f)(4)(A), many of the discovery procedures of the civil rules are expressly incorporated by Rule 251.18. Much of their general, interpretative case law will therefore be equally applicable in the disciplinary context. The scope of discovery under the Colorado Rules of Civil Procedure, which we have characterized as very broad, *Williams v. District Court*, 866 P.2d 908, 911 (Colo.1993); *Kerwin v. District Court*, 649 P.2d 1086, 1088 (Colo.1982), has included any matter relevant to the claim or defense of any part that is not privileged. C.R.C.P. 26(b)(1).[4]

■■■ Even though these rules permit broad discovery, it is not unlimited. *See Leidholt v. District Court*, 619 P.2d 768, 770 (Colo.1980). The discovery process can be abused by disproportionate and inappropriate requests that increase the cost of litigation, harass an opponent, or tend to delay a fair and just determination of the legal issues. *Id.* Discovery must also be limited to avoid unnecessarily infringing upon privacy and confidentiality. *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 720 (Colo.1999). While the information sought in discovery need not be admissible at trial, it must at least be reasonably calculated to lead to the discovery of admissible evidence. *Martinelli v. District Court*, 199 Colo. 163, 168, 612 P.2d 1083, 1087 (1980).

■■■ Because a balance must be struck between the need for information and these countervailing considerations, a motion to compel discovery is generally committed to the discretion of the trial court, and its determination will be upheld on appeal absent a clear abuse of discretion. *Williams*, 866 P.2d at 911; *Gagnon v. District Court*, 632

P.2d 567, 569 (Colo.1981); *see also Bond v. District Court*, 682 P.2d 33, 40 (Colo.1984); *In re Marriage of Mann*, 655 P.2d 814, 816 (Colo.1982). Where, however, it is clear that the trial court misconceives the materiality of certain matters to the proceeding before it, its assessment of the relevance of information tending to prove those matters or the likelihood that such information will lead to the discovery of relevant evidence is also necessarily affected.

### A. STANDARD OF CARE

The respondent explained that he sought discovery of the past practices of the reporting attorney and his office in connection with the appointment of arbitrators, as relevant to the standard of care applicable to the profession in choosing arbitrators and making disclosures. The Presiding Disciplinary Judge considered discovery relative to such a standard of care appropriate, but only to the extent that it might relate to a mitigating factor. Relying on language from *People v. Reichman*, 819 P.2d 1035 (Colo.1991), the disciplinary judge found that the conduct of other lawyers could be taken into account as mitigation in sanctioning an attorney for misconduct. In response to objections that the reporting attorney had nevertheless not been retained or endorsed as an expert witness, the PDJ made clear that he did not consider the standard of care or practice to be a matter requiring expert opinion but that the defendant or any other lawyer in the state with knowledge of the standard of practice would be subject to subpoena on that issue.

This court has consistently recognized the ABA Standards for Imposing Lawyer Sanctions (1991 & Supp.1992) as the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct. *In the Matter of Pautler*, 47 P.3d 1175, 1183 (Colo. 2002); *In the Matter of Attorney C.*, 47 P.3d 1167, 1173 (Colo.2002); *In re Myers*, 981 P.2d 143, 144 (Colo.1999); *In re Quiat*, 979 P.2d 1029, 1042 (Colo.1999); *People v. Susman*, 787 P.2d 1119, 1120 (Colo.1990). The purpose behind the creation of these Stan-

---

4. Effective Jan. 1, 2002, the precise language of C.R.C.P. 26(b)(1) was amended to comport with the 2000 amendments to F.R.C.P. 26(6)(1).

dards was to enhance the consistency of sanctions imposed in attorney disciplinary proceedings. *See* ABA Standards, Preface 01:801–01:803. The Standards describe a range of available sanctions and require, in choosing the appropriate one, consideration of the duty that was violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of various aggravating or mitigating factors. ABA Standards 3.0.

The mitigating circumstances that may justify a reduction in the degree of discipline to be imposed, are enumerated by the Standards as:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcohol or drug abuse when;

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(*l*) remorse;

(m) remoteness of prior offenses.

ABA Standards 9.32.

Even taking the PDJ's reference to mitigation broadly, as including any consideration that might affect the sanction for a violation, neither the ABA Standards nor the prior holdings of this court suggest that the conduct of other attorneys or their personal interpretations of the rules of conduct are themselves relevant. Expert testimony concerning practice in a particular area of the law might be admissible under some circumstances, to assist the board with such things as the practical implications of ethical rules, the difficulty of their application, or even the way they are commonly understood among practitioners, but the conduct of other individual attorneys in similar circumstances will rarely if ever be relevant to establishing either the occurrence of a violation or the propriety of a sanction. The fact that other particular attorneys may have engaged in the same practice as the respondent, even if those attorneys are numerous, amounts to neither justification nor mitigation for violation of an ethical standard.

 Both the mental state and motives of the respondent himself are clearly material to the propriety of a sanction. *See* ABA Standards 3.0 and 9.32(b). With regard to the imposition of sanctions, however, the mental state of the respondent refers to his intent or awareness with respect to either his conduct or a result of his conduct. *See* ABA Standards definitions. It does not refer to his awareness or construction of a particular ethical proscription or his intent to violate it. *Cf.* § 18–1–504(2), C.R.S. (2001) ("A person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief that it does not, as a matter of law, constitute an offense."). Similarly, "the absence of a dishonest or selfish motive," which is included among the enumerated mitigating factors of the ABA Standards for Imposing Sanctions, refers to the lawyer's motive for his conduct, without regard to any awareness on his part whether that conduct is specifically proscribed as unethical. While not necessarily irrelevant, a respondent's awareness that his conduct will violate an ethical proscription is not itself material.

■ By contrast, the fact that an attorney is acting in conformity with a commonly-accepted practice may very well be probative of his lack of improper motive or intent. Conforming to an accepted practice, either from a belief in its validity because of its general acceptance or merely as a matter of routine, although not dispositive, provides some explanation for the conduct apart from dishonesty or selfishness. But the question whether a practice is standard or accepted in the professional community is a matter of specialized knowledge or opinion. It is not rationally based on the perceptions of witnesses without specialized training or knowledge but arises only from particular experience with and knowledge of the legal community and area of practice. *See* CRE 701–702. Attempting to establish that a practice is commonly accepted by producing specific examples of conduct is too tenuous to justify the discovery of the prior behavior or practices of other particular attorneys.

■ Whether, or under what circumstances, an unconsenting witness might actually be forced to testify as an expert at trial[5] need not be resolved here. It seems clear from the record that the reporting attorney in this case was never identified or retained as an expert witness by any party and was not subject to discovery as an expert witness by stipulation or order of the court, in the absence of which he should not have been subject to discovery as an expert witness. *See* C.R.C.P. 251.18(f)(4)(C)(iii); C.R.C.P. 26(b)(4)(A). In any event, however, it is difficult to envision circumstances in which a reporting attorney would not be entitled to protection from annoyance, embarrassment, oppression, or undue expense, *see* C.R.C.P. 26(c), if not actually infringement on privilege or confidentiality, *see Corbetta*, 975 P.2d at 720, as a result of a demand by the respondent in a disciplinary proceeding for materials concerning his awareness of legal

standards in the community. The need is far too slight and the potential for abuse far too great to permit discovery of the files or opinions of a reporting attorney in a disciplinary proceeding under the guise of seeking mitigating evidence of common practices. *Cf. In the Matter of Smith*, 989 P.2d at 172 (emphasizing the need to protect those reporting attorney misconduct from abusive process in the form of retaliatory lawsuits).

And we have not before suggested otherwise. In *People v. Reichman*, 819 P.2d at 1039, where "the respondent's motives and the erroneous belief of other public prosecutors that the respondent's conduct was ethical" were referred to as mitigating factors, the decision of this court did not approve the admissibility of specific evidence of similar misconduct by other prosecutors or lay opinion concerning standards of practice, and it did not involve a question of discovery at all. More importantly, however, the erroneous belief of other public prosecutors (apparently as evidenced by published case law, *id.* at 1036), to which the decision referred, was not an erroneous construction of the proscription against dishonesty, fraud, deceit, and misrepresentation. It was a misconception about the effect of a competing duty to prosecute crime. The prominence of a belief that such a competing public duty would excuse or justify misrepresentation, although that belief turned out to be erroneous, was clearly relevant as an explanation for the respondent's sanctionable conduct, apart from any dishonest or selfish motive. Our holding in *Reichman* never suggested that a less serious sanction might be appropriate merely because other prosecutors believed the conduct to be ethical or because they would have done the same thing themselves.

Permitting examination of the reporting attorney himself, as well as his files, for indications of his own prior conduct or his opinions about ethical or legal obligations concerning arbitral disclosures appears to

---

5. *See generally* Janet Fairchild, Annotation, *Right of Independent Expert to Refuse to Testify as to Expert Opinion*, 50 A.L.R.4th 680, 1986 WL 361487 (1986)(recognizing a split among jurisdictions concerning whether, or under what circumstances, a witness may be compelled to give an expert opinion, including consideration of

such factors as whether the expert's testimony will involve facts or opinion; the contractual basis of expert's appearance; the availability of other qualified experts; the expert's previous relationship with the parties or issues; and the inconvenience or hardship involved).

have been based on a misunderstanding of their materiality and amounted to an abuse of discretion.

### B. STATUTE OF LIMITATIONS

The respondent also asserted, and the disciplinary judge agreed, that a number of the documents were potentially relevant to the limitations period referred to in C.R.C.P. 251.32(i). Paragraph (i) is entitled, "Statute of Limitations," and provides that a "request for investigation against an attorney shall be filed within five years of the time that the complaining witness discovers or reasonably should have discovered the misconduct." Although there was little discussion of the rule at the hearing before the PDJ (or in the briefs before this court), there appeared to be a general acceptance by all involved that the rule would bar the disciplinary proceeding unless the reporting attorney requested the investigation within five years of his discovery of the conduct forming the basis for at least some of the charges. The PDJ's order therefore permitted examination of the reporting attorney and documents for information relevant to the question when the reporting attorney learned of the conduct forming the basis of the charges.

Despite Rule 251.32(i)'s title, its actual text, which fails to bar the filing of a complaint or the administration of discipline and conditions its bar to a request for investigation upon the knowledge or negligence of a "complaining witness," leaves the meaning of the rule far from clear. Whatever its precise nature and scope, however, the time bar created by the rule is expressly excused "for misconduct alleging fraud, conversion, or conviction of a serious crime, or for an offense the discovery of which was prevented by concealment by the attorney." *Id.* By expressing these exemptions in broad, generic terms—allegations of fraud, conversion, serious crime, or conduct involving concealment—the rule restricts the effect of any intended time bar to less serious kinds of misconduct.

██ Particularly, the term "fraud," when not limited by context or express definition, has a generic meaning that includes virtually any kind of deception or unfair way of inducing another to surrender rights or property. *See Nichoalds v. McGlothlin,* 330 F.2d 454, 457 (10th Cir.1964); *see generally Black's Law Dictionary* 660 (6th ed. 1990)("A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."). While the conduct involving dishonesty, deceit, or misrepresentation that is designated "misconduct" in RPC 8.4(c) might be considered broader than "fraud" in some contexts, the conduct of denying or failing to disclose a financial, business, or professional relationship in connection with appointment as an insurance arbitrator, which is the misconduct charged in this case, falls clearly within the meaning of "fraud" as that term is used in Rule 251.32(i). Therefore, neither the timing of the charged misconduct's commission nor the timing of its discovery could bar the disciplinary proceeding in this case.

### IV. CONCLUSION

Because we find that the Presiding Disciplinary Judge misperceived the relevance of the opinion and prior conduct of a lay witness concerning a standard of care or practice for arbitral disclosures, and the relevance of the discovery by the reporting attorney of the alleged misconduct, we hold that the PDJ abused his discretion in fashioning the protective order in this case. The Rule is therefore made absolute, and the case is remanded for further proceedings consistent with this opinion.