In re Patricia CORBETTA,
Plaintiff–Respondent,

v.

ALBERTSON'S, INC., Defendant–
Petitioner,

and

Fresh Express, Inc., Defendant.

No. 98SA128.

Supreme Court of Colorado,
En Banc.

Jan. 19, 1999.

Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., Lorriane E. Parker, Cook & Fitch, Richard K. Rediger, Denver, for Defendant–Petitioner.

Sanderson & Associates, P.C., Jeffrey S. Gard, David S. Sanderson, Boulder, for Plaintiff–Respondent.

Justice RICE delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, the petitioner, Albertson's, Inc., seeks a writ prohibiting the trial court from enforcing an order compelling discovery of certain employee files, as well as five years of state and federal tax returns. Petitioner argues that the trial court erred in compelling production of its personnel records without first balancing the interests favoring discovery against the privacy interests of its employees. Further, petitioner alleges that the trial court erred in ordering production of its tax returns because section 13–21–102(6), 5 C.R.S. (1998) bars consideration of evidence of income or net worth when deciding whether to award exemplary damages. We issued a rule to show cause. We now make that rule absolute.

## I.

The petitioner is the defendant in a civil action brought in the trial court by Patricia Corbetta (Corbetta). On June 20, 1996, Corbetta allegedly cracked several teeth on a pebble in a spinach salad she purchased in one of petitioner's grocery stores. On May 9, 1997, Corbetta filed a civil action against the petitioner alleging negligence, negligent supervision, premises liability, strict liability in tort, implied warranty of merchantability, and breach of contract. Corbetta did not seek exemplary damages in her initial complaint.

On July 18, 1997, Corbetta filed a request for production of documents pursuant to C.R.C.P. 34, seeking petitioner's state and federal corporate tax returns for the previous five years, as well as the entire employment files of the store manager and all deli/salad bar employees and managers employed at the subject grocery store in the week preceding Corbetta's purchase of the spinach salad.

The petitioner objected to the requests for production, claiming, inter alia, that production would constitute an invasion of privacy. In response, Corbetta filed a motion to compel, requesting "an order requiring [petitioner] to properly and completely respond to [Corbetta's] various discovery requests." Corbetta's motion did not specifically address her requests for production of petitioner's tax returns or personnel files, nor did it enumerate any reasons why Corbetta needed discovery of these items.

On November 14, 1997, the trial court issued an order granting Corbetta's motion, stating, "[t]he discovery requests appear appropriate and Defendant shall respond within 20 days."

The petitioner responded by filing a motion for reconsideration on December 3, 1997, arguing that (1) its tax records were not relevant to the assessment of Corbetta's compensatory damages claims; (2) production of its personnel files would invade the right of privacy or confidentiality of its employees who, notably, were not parties to the suit; and (3) the trial court's order was deficient because it failed to conduct the balancing inquiry which must be undertaken when the right to privacy is invoked.

Nine days later, Corbetta amended her complaint to include a claim for exemplary damages.[1] In responding to the petitioner's motion for reconsideration, Corbetta alleged that the petitioner's tax records were relevant not only to her newly asserted punitive damages claim, but also to her negligence claims.

On March 5, 1998, the trial court declined to reconsider its order compelling discovery of petitioner's personnel files and tax records. While the trial court did not address the petitioner's privacy claim directly, it noted that the employment files were not the property of the employees but, rather, were merely files created and kept by the petition-

1. In support of her allegation of punitive damages, Corbetta asserted that "numerous like incidents [had] occurred in connection with the ... spinach product."

er. Although it noted that there may be information within the personnel files that does relate to the employees' intimate selves, the trial court held that it could not speculate as to what information might be within said files. Notably, the trial court's order does not reflect any balancing of the competing interests for and against discovery of these files.[2] In declining to reconsider its order compelling production of the petitioner's tax records, the trial court held that petitioner's objection was moot in light of Corbetta's newly asserted punitive damages claim. This petition for a writ of prohibition followed.

## II.

■■■ Under the Colorado Rules of Civil Procedure, the scope of discovery is very broad. *See Kerwin v. District Court,* 649 P.2d 1086, 1088 (Colo.1982). For example, C.R.C.P. 26(b)(1) provides:

> [p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

In addition, when resolving discovery disputes, we construe the rules of civil procedure liberally to effectuate the full extent of their truth-seeking purpose. *See Smith v. District Court,* 797 P.2d 1244, 1248 (Colo. 1990). In keeping with these tenets, motions to compel discovery are committed to the discretion of the trial court, and the court's determination must be upheld on appeal absent a clear abuse of discretion. *See Williams v. District Court,* 866 P.2d 908, 911

(Colo.1993); *Gagnon v. District Court,* 632 P.2d 567, 569 (Colo.1981).

## III.

The petitioner argues that the trial court abused its discretion by failing to balance the competing interests served by granting or denying discovery of the personnel files. More specifically, the petitioner argues that the trial court was required to conduct the three-part balancing test set forth in *Martinelli v. District Court,* 199 Colo. 163, 173–76, 612 P.2d 1083, 1091–93 (1980), before granting plaintiff's motion to compel production of these files. We agree.

While the information sought in discovery need not be admissible at trial, C.R.C.P. 26(b)(1) provides that it must be "reasonably calculated to lead to the discovery of admissible evidence." However, relevancy is not the end of the inquiry. An additional test is necessary when a party opposes discovery on the ground that it would violate a right to privacy or a right to confidentiality. *See Williams,* 866 P.2d at 912–13; *Martinelli,* 199 Colo. at 173–76, 612 P.2d at 1091–93.

The right to privacy protects "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *see also Martinelli,* 199 Colo. at 173, 612 P.2d at 1091. The right to privacy, alternatively referred to as the "right to confidentiality," encompasses the "power to control what we shall reveal about our intimate selves, to whom, and for what purpose." *Martinelli,* 199 Colo. at 173–74, 612 P.2d at 1091.

■■■ When the right to privacy or confidentiality is invoked, as it has been here, to prevent discovery of personal materials or information, the trial court must conduct a three-part balancing inquiry.[3] This inquiry

---

**2.** In support of its refusal to reconsider production of the personnel files, the trial court relied upon the liberal discovery standards set forth in C.R.C.P. 34(a)(1) (allowing inspection and copying of documents in the possession, custody, or control of the party upon whom the request is served), C.R.C.P. 26(a)(6) (requiring party resisting disclosure to produce a privilege log), and C.R.C.P. 26(b)(1) (allowing discovery of any non-privileged documents relevant to the subject matter of the pending action).

**3.** In denying reconsideration of its order compelling production of the personnel files, the trial court erroneously relied on the fact that these files did not belong to the petitioner's individual employees, but instead belonged to the petitioner. The petitioner's status as the custodian of its employees' personnel records entitled it to raise a privacy objection on behalf of its employees. *See Williams,* 866 P.2d at 912–13 (holding that the trial court erred by not balancing plaintiff's discovery interests against the privacy interests of third-parties with whom defendant may have

requires the trial court to consider: (1) whether the individual has a legitimate expectation of nondisclosure; (2) whether disclosure is nonetheless required to serve a compelling state interest; and (3) where a compelling state interest necessitates disclosure of otherwise protected information, how disclosure may occur in a manner which is least intrusive with respect to the right to confidentiality. *See Martinelli,* 199 Colo. at 174, 612 P.2d at 1091. Furthermore, it must be apparent from the order compelling discovery that the trial court conducted the foregoing test. *Id.* at 175, 612 P.2d at 1092.

 Our review of the trial court's order compelling discovery reveals that it did not apply the foregoing principles. The trial court simply found that the information requested by Corbetta might be relevant and ordered the petitioner to produce the requested personnel files in their entirety. In our opinion, the trial court's failure to apply the *Martinelli* balancing test requires us to vacate its order compelling discovery of the personnel files. Therefore, we direct the trial court to conduct an in camera examination of the requested personnel files in order to facilitate its application of the *Martinelli* balancing test and to make specific findings regarding same.

### IV.

The petitioner further argues that the trial court abused its discretion by ordering it to produce financial information in conjunction with Corbetta's punitive damages claim in violation of section 13–21–102(6).[4] We agree.

 Exemplary damages in Colorado are available pursuant only to statute. *See Amber Properties, Ltd. v. Howard Elec. & Mechanical Co.,* 775 P.2d 43, 46 (Colo.App.1988); *Kaitz v. District Court,* 650 P.2d 553, 556

been sexually involved); *Belle Bonfils Mem'l Blood Ctr. v. District Court,* 763 P.2d 1003, 1011–13 (Colo.1988) (recognizing that disclosure of third-party blood donors' records implicates rights to privacy and fashioning a limited discovery procedure to protect donors' privacy even though they were not parties to the action).

4. In light of the well-established tort law principle that a defendant's financial status is irrelevant in assessing compensatory damages, we decline to address Corbetta's contention that the

(Colo.1982); *Ark Valley Alfalfa Mills, Inc. v. Day,* 128 Colo. 436, 440, 263 P.2d 815, 817 (1953). In 1986, the legislature added the following provision to the exemplary damages statute:

> In any civil action in which exemplary damages may be awarded, *evidence of the income or net worth of a party shall not be considered in determining the appropriateness or amount of such damages.*

§ 13–21–102(6), 6A C.R.S. (1987) (emphasis added).

 Our primary task in construing a statute is to ascertain and give effect to the intent of the legislature. *See People v. Zapotocky,* 869 P.2d 1234, 1238 (Colo.1994). In order to discern legislative intent, we look first to the language of the statute itself. *See Farmers Ins. Exch. v. Bill Boom Inc.,* 961 P.2d 465, 470 (Colo.1998); *Seaward Constr. Co. v. Bradley,* 817 P.2d 971, 973 (Colo.1991). However, if the intended scope of the statutory language is unclear, we may look to principles of statutory construction to ascertain the legislative intent. *See* § 2–4–203(1)(a)–(g), 1 C.R.S. (1998); *Aetna Cas. & Sur. Co. v. McMichael,* 906 P.2d 92, 97 (Colo. 1995); *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989). For example, we may consider: (1) the problem addressed by the legislation, *see Farmers Ins. Exch.,* 961 P.2d at 470; (2) the statute's legislative history, *see Griffin,* 775 P.2d at 559; (3) the state of the law prior to the legislative enactment, *see Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988); and (4) the textual context of the legislation in an effort to clarify the legislative intent. *See Colby v. Progressive Cas. Ins. Co.,* 928 P.2d 1298, 1302 (Colo. 1996); *Krieg v. Prudential Property & Cas. Ins. Co.,* 686 P.2d 1331, 1335 (Colo.1984).

petitioner's tax records are relevant to her claims of negligence and negligent supervision. *See Leidholt v. District Court,* 619 P.2d 768, 770 (Colo.1980) (noting that "[i]t has long been established as a principle of tort law that in suits involving the assessment of compensatory damages, evidence of a defendant's financial status is inadmissible."). Therefore, we analyze petitioner's arguments only as they pertain to Corbetta's punitive damages claim.

While the plain language of section 13–21–102(6) clearly bars a court from considering a defendant's financial data in determining whether to award punitive damages, it does not specifically address whether a plaintiff may *discover* a defendant's financial records. Moreover, this issue is one of first impression before this court. As such, we turn to the aforementioned principles of statutory construction for guidance.

To begin, we note that section 13–21–102(6) was added to the exemplary damages statute as part of a sweeping tort reform package enacted by the legislature.[5] *See* H.B. 1197, 1986 Colo. Sess. Laws 675–76, ch. 106, sec. 1, § 13–21–102; *see also Kirk v. Denver Publ'g Co.,* 818 P.2d 262, 263 (Colo. 1991); *Amber Properties, Ltd.,* 775 P.2d at 46. As such, it must be construed as evincing the legislature's intent to narrow the availability of punitive damages. *See* Hearings on H.B. 1197 before the House State Affairs Comm., 55th Gen. Assembly, 2nd Sess. (Audio Tape, Feb. 4, 1986); *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1077 (Colo.1992) (noting that tort reform legislation was designed to limit plaintiffs' recovery in civil actions); *Lira v. Davis,* 832 P.2d 240, 245–46 (Colo.1992) (holding that "[t]here is no doubt that the purpose of House Bill 1197 was to limit excessive punitive damages awards" and noting that the title of the bill itself, "An Act Concerning the Award of Damages, and Providing for Limitation Thereon and for the Disposition Thereof," supports holding).

The legislative history of section 13–21–102(6) provides additional insight into the legislature's intent. According to the statute's sponsor, Representative Grant, section 13–21–102(6) is designed to "mitigate and alleviate" the need for parties to bring financial records into court for review by the opposing side. *See* Hearings on H.B. 1197 before the Conf. Comm. of the 55th Gen. Assembly, 2nd Sess. (Audio Tape, Apr. 16, 1986) (statement of Rep. Grant). Representative Grant perceived the requirement that a party produce its financial records to be a procedural abuse of the punitive damages doctrine. *See id.*

In order to properly understand the legislative intent, we must also examine the state of punitive damages law prior to the statute's repeal and reenactment in 1986. Before 1986, a court could consider the financial condition of a defendant in determining exemplary damages. *See, e.g., Leidholt v. District Court,* 619 P.2d 768, 770 (Colo.1980); *Frick v. Abell,* 198 Colo. 508, 512, 602 P.2d 852, 854 (1979); *Ortivez v. Davis,* 902 P.2d 905, 910–11 (Colo.App.1995) (noting that "*[u]nder the [pre–1986] version of the statute,* defendant had the option of introducing evidence of his limited means . . . in order to encourage the jury to moderate its award") (emphasis added). However, even then, the discovery of the defendant's financial data was subject to two limitations. Under the pre–1986 statutory scheme, the plaintiff was required to present prima facie proof of a triable issue of liability for punitive damages before it could discover information relating to the defendant's financial status. *See Leidholt,* 619 P.2d at 771 (noting that the "mere allegation that a plaintiff is entitled to punitive damages will not support an order for discovery of a defendant's financial condition").[6]

Finally, the textual context of section 13–21–102(6) illustrates that, in reenacting the 1986 exemplary damages statutory scheme, the legislature sought to tie punitive damage

---

**5.** The Colorado legislature enacted other tort reform statutory provisions contemporaneously with House Bill 1197, which was later codified at section 13–21–102. *See, e.g.,* § 13–21–102.5, 6A C.R.S. (1987) (limiting the recovery of damages for non-economic losses), and § 13–21–111.5, 6A C.R.S. (1987) (providing for pro rata liability of multiple defendants).

**6.** In *Leidholt,* we held that
the nature of discovery of financial information of a litigant requires a broader basis for protection. Thus, when punitive damages are in issue and information is sought by the plaintiff relating to the defendant's financial condition, justice requires no less than the imposition on the plaintiff of the burden of establishing a prima facie right to punitive damages.
619 P.2d at 771 (emphasis added). The *Leidholt* court also held that, in the face of an invocation of a right to privacy, the needs of the party seeking discovery must be balanced by weighing the other party's right to privacy and protection from harassment by an intrusion into its financial affairs, against the right to discovery of information which is relevant to a claim for punitive damages. *See id.* at 770–71.

awards to the amount of the actual damages awarded, rather than to the defendant's income. *See* § 13–21–102(1)(a), 5 C.R.S. (1998).[7] When the legislature's express desire to link punitive damages to actual damages is viewed in conjunction with the language of section 13–21–102(6), it is clear that the discovery of petitioner's financial records is impermissible.

In light of the foregoing analysis, we find that section 13–21–102(6) bars discovery of petitioner's tax records in civil actions in which exemplary damages may be awarded. Therefore, the trial court abused its discretion in ordering the petitioner to produce its tax records.

### V.

Accordingly, we make the rule absolute and direct the trial court not only to vacate its order compelling production of petitioner's tax records, but also to apply the *Martinelli* balancing test and to conduct an in camera review of the personnel files in a manner consistent with this opinion.

---

7. Only when extraordinary circumstances are present may a plaintiff's punitive damages recovery exceed the amount of his or her actual damages. *See* § 13–21–102(3)(a) & (b), 5 C.R.S. (1998) (allowing recovery of three times the amount of actual damages awarded if the defendant has acted in a willful and wanton manner during the pendency of the action to further aggravate the plaintiff's damages, or if the defendant has continued the behavior or repeated the action which is the subject of the claim in a willful and wanton manner against either the plaintiff or against others).

