In re: Plaintiff: Jerry WEIL, M.D.,

v.

Defendants: DILLON COMPANIES,
INC., d/b/a City Market, a Kansas
corporation; and John Doe.

No. 04SA356.

Supreme Court of Colorado,
En Banc.

Jan. 24, 2005.

As Modified on Denial of Rehearing
March 28, 2005.*

Leventhal, Brown & Puga, P.C., Lorraine
E. Parker, Denver, for Plaintiff.

* Justice KOURLIS does not participate.

Burg Simpson Eldredge Hersh & Jardine, P.C., Stephen M. Johnson, David K. TeSelle, Englewood, for Defendants.

Justice KOURLIS does not participate.

BENDER, Justice.

In this original proceeding, we review the trial court's order that the plaintiff in a personal injury action, Dr. Jerry Weil, release all of his medical records from certain healthcare providers to the defendant, Dillon Companies, Inc., without first determining whether the records requested were related to the cause and extent of the injuries and damages claimed in this suit. We issued a rule to show cause and make the rule absolute.

Our precedent instructs that generic claims for pain and suffering, emotional distress, and loss of quality of life do not constitute an implied waiver of the physician-patient privilege. Thus, we hold that the plaintiff here did not waive his physician-patient privilege for medical records wholly unrelated to his injuries and damages claimed. In making the rule absolute, we vacate the trial court's order that Weil authorize blanket releases of all his medical records. Upon remand, if Dillon Companies requests medical records related to the damages and injuries sustained by Weil, and he objects, then the trial court in its discretion may direct discovery of those records if it finds the records to be related to the cause and extent of the injuries claimed. However, Dillon Companies is not entitled to his medical records bases solely on Weil's generic, garden variety claims, of pain and suffering and loss of quality of life.

**Facts and Proceedings Below**

Dr. Jerry Weil, petitioner, is the plaintiff in a personal injury case. On August 17, 2002, Weil was purchasing groceries at a City Market grocery store owned by the defendant, Dillon Companies, Inc., when he slipped and fell in the store's produce section. As a result of the fall, Weil suffered several injuries including a fractured pelvis, a frac-tured sacrum (tail-bone), and a torn rotator cuff in his left shoulder. Weil sued Dillon Companies both to recover his medical expenses associated with these injuries and to obtain non-economic damages for "pain and suffering, inconvenience, impairment of quality of life, inability to engage in his normal activities, permanent physical impairment, and past and future economic losses." Trial had been scheduled for December 20, 2004.

During pretrial discovery, Weil provided Dillon Companies with medical records, reports, and bills covering the period of time from the date of the accident through July 24, 2003. On July 1, 2004, Dillon Companies provided Weil with its First Set of Pattern and Non–Pattern Interrogatories and Requests for Production of Documents. The interrogatories asked about the specifics of Weil's injuries as well as any prior injuries and hospitalizations. This request also asked Weil to sign and execute blanket releases for medical records from fourteen healthcare providers not already disclosed to Dillon Companies. [1] Records included in release form were psychiatric consultation reports, angiograms, physicals, and pathology reports as well as numerous other reports and documents for treatments received since 2000. Weil was effectively asked to disclose all of his medical records from these various healthcare providers, not just those records related to the injuries and damages he suffered as a result of the accident at issue.

In Weil's responses to the interrogatories, he stated that he suffered anxiety over a misdiagnosis from one of the injuries as well as developed a fear of falling since the accident. With respect to the release request, he objected to authorizing blanket releases of his medical records to Dillon Companies. Weil claimed that these records were for treatments unrelated to the injuries and damages claimed in this suit and thus subject to the physician-patient privilege. Moreover, the filing of the lawsuit did not waive this privilege. In other words, Dillon Companies' records request amounted to an unlimited release of Weil's medical history and the

---

**1.** It is not clear from our limited record what services these physicians and healthcare provid-ers actually delivered to Weil.

physician-patient privilege shielded records of unrelated medical conditions or treatments from disclosure.

Dillon Companies then filed a motion with the trial court to compel Weil to authorize blanket releases of all of his medical records from fourteen healthcare providers to Dillon Companies' attorneys. The trial court issued an initial order stating that he would not allow a claim for damages where "the defendant was denied record access by the failure of plaintiff to execute appropriate waivers." Dillon Companies then filed a Motion for Clarification. The trial court's order on this motion required Weil to issue "appropriate releases" of his medical records so that Dillon Companies could know the quality of Weil's life prior to being injured in the fall, otherwise the court would limit non-economic damages to what "*an ordinary person would likely* experience in similar circumstances" (quoting *Johnson v. Trujillo*, 977 P.2d 152, 157 (Colo.1999)) (emphasis in trial court's order).

We issued a rule to show cause as to why Weil should be required to authorize blanket releases of his medical records or be limited in the amount of non-economic damages he could recover. We now make the rule absolute.

### I.

This court has original jurisdiction to review whether a trial court abused its discretion in circumstances where a remedy on appeal would be inadequate. C.A.R. 21; *Hoffman v. Brookfield Republic, Inc.*, 87 P.3d 858, 861 (Colo.2004); *Johnson*, 977 P.2d at 154; *Kourlis v. Dist. Court*, 930 P.2d 1329, 1330 n. 1 (Colo.1997). If Weil's medical records are protected by the physician-patient privilege provided by state statute, "then the damage to [him] will occur upon the disclosure of the records" despite the ultimate outcome of his personal injury action. *John-*

son, 977 P.2d at 154 (quoting *Clark v. Dist. Court*, 668 P.2d 3, 7 (Colo.1983)). Hence, we find it appropriate to address the validity of the trial court's order in this original proceeding. *See Hoffman*, 87 P.3d at 861; *Johnson*, 977 P.2d at 154; and *Clark*, 668 P.2d at 7.

### II.

We begin our analysis with a discussion of the statutory physician-patient privilege as it applies to requests for pretrial discovery. Section 13–90–107, C.R.S. (2004), vests the patient with the power to prevent a treating physician from disclosing information obtained in the course of treatment.[2] *Johnson*, 977 P.2d at 154. The purpose behind the physician-patient privilege is "to enhance the effective diagnosis and treatment of illness by protecting the patient from the embarrassment and humiliation that might be caused" through disclosure of that information. *Hoffman*, 87 P.3d at 861 (quoting *Clark*, 668 P.2d at 8). Once attached, this privilege applies "equally to in-court testimony and to pretrial discovery of information." *Hoffman*, 87 P.3d at 861. Thus, upon attachment of the privilege, "the only basis for authorizing a disclosure of the confidential information is by express or implied waiver." *Id.* at 862 (quoting *Clark*, 668 P.2d at 9).

A party seeking to overcome this privilege bears the burden of establishing waiver. *Johnson*, 977 P.2d at 155. A plaintiff does not impliedly waive this privilege "merely by seeking damages under a generic claim of mental suffering which is incidental to the physical injuries underlying the suit." *Hoffman*, 87 P.3d at 863. Rather, waiver of the physician-patient privilege occurs when "the privilege holder has injected his physical or mental condition into the case as the basis of a claim or an affirmative defense." *Clark,*

---

2. Section 13–90–107 states in part:
(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases: . . .
(d) A physician, surgeon, or registered professional nurse duly authorized to practice his profession pursuant to the laws of this state or any other state shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient . . .

668 P.2d at 10. *See also Hoffman*, 87 P.3d at 863; and *Johnson*, 977 P.2d at 155. With these principles in mind, we turn to the facts of this case.

## III.

Dillon Companies claims that Weil waived the physician-patient privilege when he filed the lawsuit seeking damages for emotional injuries and for the loss of enjoyment of life. Thus, Dillon Companies contends that it is entitled to all of Weil's medical records from those providers who delivered care to Weil. It asserts that access to these records would "assure full discovery" as to the cause of the claimed injuries as well as determine the extent that an injury from the slip and fall incident is related to some pre-existing condition.

Weil concedes that he has waived confidentiality in his medical records for those conditions that are at issue in the lawsuit. In fact, he provided a limited release of his medical records from several different healthcare facilities that treated him for his injuries. However, Weil claims that he must now choose between signing the releases, thereby disclosing medical records that are "not in any way limited to the conditions at issue," or being limited in the amount of damages he could recover.

To assist us in our analysis we turn to our cases of *Johnson v. Trujillo* and *Hoffman v. Brookfield Republic, Inc.*, which addressed whether a plaintiff in a personal injury claim impliedly waived the physician-patient or psychotherapist-client privilege by asserting general claims of pain and suffering.

Elizabeth Johnson claimed mental suffering as a result of her injuries arising out of an auto accident caused by the defendant, Charlotte Trujillo. *Johnson*, 977 P.2d at 153. Trujillo sought medical records from Johnson's psychiatric treatments as well as from her marriage counseling sessions. *Id.* at 153–54. While Trujillo conceded that these records were privileged communications, she argued that Johnson had impliedly waived this privilege by alleging emotional and mental suffering and that justice would be harmed if these records were suppressed.

*Id.* at 156. We found these arguments unpersuasive and held that while Johnson had made a limited waiver of her physician-patient privilege, she had not thereby impliedly made a complete waiver of this privilege or the psychotherapist-client privilege simply by making "generic claims" for mental suffering and for the loss of the enjoyment of life. *Id.* at 157. Critical to our decision was the fact that Johnson did not make any independent tort claim for either the intentional or negligent infliction of emotional distress where liability would be based on the cause of the plaintiff's mental condition. Rather, the damages for mental suffering were "incident to the plaintiff's physical injuries and [did] not exceed the suffering and loss an ordinary person would likely experience in similar circumstances." *Id.* at 157.

Recently, we re-examined and reaffirmed our holding in *Johnson* that a plaintiff does not impliedly make a complete waiver of the psychotherapist-client privilege simply by making generic claims of mental suffering incidental to the underlying suit. *Hoffman*, 87 P.3d at 863. Nancy Hoffman, the plaintiff in a personal injury claim, claimed damages for "pain and suffering and emotional distress" as a result of her fall. The defendant sought an order compelling Hoffman to release her mental health records for the ten years prior to the slip and fall injury. *Id.* at 859. The property owner argued that Hoffman's records were necessary to prepare its theory of defense that her personal mental health problems may have contributed to her emotional distress. *Id.* at 860. We held that this "garden variety mental suffering claim" raised in Hoffman's complaint did not inject her mental condition into the case so as to impliedly waive her psychotherapist-patient privilege. *Id.* at 864. Again, essential to our holding was the fact that the plaintiff had not sought compensation for psychiatric expenses but sought damages for mental suffering "incident to her physical injuries." *Id.* (quoting *Johnson*, 977 P.2d at 157.)

Turning to the facts of this case, we do not see any reason why Dillon Companies is entitled to discovery of all of Weil's medical records in order to understand the impact the injury had on the level of his pain and

suffering or on the quality of his life after the fall. Like the plaintiffs in *Johnson* and *Hoffman*, Weil does not seek compensation for counseling or treatment of a psychological nature. Nor is there any evidence that he intends to call an expert witness to testify to his mental suffering or loss of enjoyment of life. Weil's responses to the interrogatories, that he developed a fear of falling and anxiety over a misdiagnosis as a result of the incident, only express the nature of his injury.[3] While these past injuries may have some relevance to his current claims, "relevance alone cannot be the test." *Johnson*, 977 P.2d at 157. Rather, the rest is whether Weil significantly injected his physical and mental condition as the basis of his claim. *Hoffman*, 87 P.3d at 863–64; *Johnson*, 977 P.2d at 157; *Clark*, 668 P.2d at 10. This is determined on a case-by-case inquiry into "the cause and extent of the injuries which form the basis for a claim for relief." *Samms v. Dist. Court*, 908 P.2d 520, 525 (Colo. 1995) (citing *Clark*, 668 P.2d at 10.

Just like in *Johnson* and *Hoffman*, Weil's "bare allegations of mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life" asserted in his complaint do not rise to the level of injecting his prior mental and physical conditions into the case to the extent that he completely waives the physician-patient privilege. While *Johnson* and *Hoffman* involve claims of mental suffering, we held that these claims did not allow the defendant to access either plaintiff's mental health history in order to know the quality of life before the injury. Similarly, Weil does not open up his entire medical history by making generic claims for the loss to his quality of life and for pain and suffering.

By making these claims for injury and a diminished quality of life, Weil impliedly made a limited release of medical records relating to the cause and extent of the injuries and damages sustained as a result of the defendant's claimed negligence. This implied waiver, however, does not amount to a complete release of his prior medical history. While the trial court is vested with wide discretion to control the discovery process, we hold that the trial court in this case abused its discretion when it read *Johnson* to require Weil to authorize blanket disclosure of medical records without first determining the extent that the records requested were related to Weil's injuries and damages claimed. [4] If Dillon Companies narrows its request and makes a showing that the records requested were related to the injuries and damages complained of in the current litigation, then the court in its discretion could direct discovery to those medical records related to the cause and extent of the injuries and damages claimed and protect records that are wholly unrelated to Weil's current claims. In sum, records related to the cause and extent of the specific injuries and damages claimed by Weil are discoverable and are to be disclosed to Dillon Companies, however, Dillon Companies is not entitled to Weil's medical history for his generic, garden variety, claims of pain and suffering and loss of quality of life.

## Conclusion

For the reasons articulated, Weil did not make a complete waiver of his physician-patient privilege by making generic, garden-

---

3. In *Hoffman*, we held that the fact that the plaintiff explained the "nature of her suffering and emotional distress" with details of how the injury affected her mental state, self-esteem, and quality of life did not thereby "transform her generic claim for mental suffering into a peculiar assertion of psychological damages." 87 P.3d at 863–64. Likewise, Johnson's fear about having surgery did not place her mental state in controversy such that she would be required to disclose medical records. *Johnson*, 977 P.2d at 158.

4. The trial court's order also stated that should Weil not authorize the release of his medical records, he would be limited in the amount of recovery to what "an ordinary person would

experience." While we held in *Johnson* that the plaintiff had not made a complete waiver of the physician-patient or psychotherapist-client privilege because she did not claim injuries that "exceed[ed] the suffering and loss an ordinary person would likely experience," we also said that in calculating damages, the jury should consider the "pain and suffering *she* will experience" due to her injuries. *Johnson*, 977 P.2d at 157, 158 (emphasis added). Therefore, should Weil prevail on his generic claims for the loss of enjoyment of life and for pain and suffering, the jury must be allowed to consider the impact the injury has to him, a subjective standard, and not what an ordinary person would experience.

variety, claims for pain and suffering and the loss to his quality of life incident to the injuries he sustained. Therefore the trial court abused its discretion when it ordered Weil to authorize blanket releases of all of his medical records, and we now make the rule to show cause absolute. The trial court's order is vacated, and we remand this case to that court for further proceedings consistent with this opinion.