Julie STONE, Plaintiff.

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Defendant.

No. 07SA321.

Supreme Court of Colorado, En Banc.

June 2, 2008.

The MacKenzie Law Firm, P.C., Brian S. MacKenzie, Denver, Colorado, Attorneys for Plaintiff.

Seaman, Murphy & Chambers, P.C., Thomas J. Seaman, Karl A. Chambers, Greenwood Village, Colorado, Attorneys for Defendant.

Kennedy Childs Fogg, P.C., John R. Mann, Jennifer C. Madsen, Denver, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

In this original proceeding, we consider whether the Denver District Court erred in ordering Petitioner Julie Stone to execute authorizations for the release of her tax records as part of discovery in her action against Respondent State Farm Mutual Insurance Co. ("State Farm") to recover underinsured motorist ("UIM") benefits. Stone claims that the court abused its discretion by failing to apply the factors set forth in *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980), when it analyzed State Farm's motion to compel discovery. In response to the trial court's discovery ruling, Stone petitioned this court for review pursuant to C.A.R. 21. We issued a rule to show cause.

We reject Stone's argument that the test in *Martinelli* applies to the current case. Because we recognize that tax returns are confidential in nature, we clarify the appropriate analysis that a trial court should use before requiring disclosure of such documents. In doing so, we affirm the test previously applied in *Alcon v. Spicer*, 113 P.3d 735, 737 (Colo.2005). We hold that, in order to compel discovery of tax returns, a court must find that the returns are relevant to the subject matter of the case, and that there is a compelling need for the returns because specific information contained in the tax returns is not otherwise readily obtainable.

Here, the record does not demonstrate that the trial court applied the proper analysis in reaching its decision to require disclosure of Stone's tax returns. More specifically, it does not appear that the court considered whether the information sought by State Farm could be obtained from sources other than the returns. Accordingly, we now make our rule to show cause absolute. We vacate the portion of the trial court's order compelling discovery of Stone's tax records, and we return this case for proceedings consistent with this opinion.

## II. Facts and Procedural History

This action to recover UIM benefits stems from Stone's involvement in an April 2003 automobile accident. An underinsured driver, Dorothy Revello, struck the rear of Stone's vehicle, pushing it into the vehicle in front of her. After the accident, Stone alleged that she had been injured, and asserted a claim against Revello. Revello was insured under an automobile insurance policy that provided $25,000 in liability coverage. Three years after the accident, Revello's liability insurer paid the full limits of this policy to Stone.

Prior to the accident, Stone had purchased an insurance policy from State Farm with bodily injury coverage in the amount of $100,000 per person (or $300,000 per accident) and uninsured/underinsured motorist coverage in the amount of $100,000 per person (or $300,000 per accident). Following the settlement of her claim against Revello, Stone made a demand for the UIM benefits under the State Farm policy, seeking $75,000 (the limits of the policy less the amount already paid by Revello's liability insurer). As support for this demand, Stone claimed that she suffered injuries to her head, neck, shoulders, and back, as well as headaches. She alleged that following the accident, she experienced a significant loss of income from her employment as First Vice President of Investments at Smith Barney, where her job was to manage clients' assets.[1]

Investigating Stone's demand for UIM benefits, State Farm requested information concerning Stone's medical treatment and wage loss. Stone's medical records showed that she continued to work full time without restrictions until the time of her brain surgery in October 2003, only reporting problems in performing her job after the surgery.[2] Based on this information, State Farm concluded that the causal relationship between the accident and Stone's lost income was tenuous. When no agreement could be reached as to the amount of UIM benefits owed, State Farm advanced $6,000 to Stone. Disputing the amount, Stone brought this underinsured motorist/bad faith action against State Farm, pursuing claims for past and future loss of earnings, earning capacity, and non-economic damages including permanent impairment.

Thereafter, State Farm undertook discovery to determine, among other things, whether there was any loss of income actually caused by the accident, and if so, how much. State Farm served Stone with interrogatories, requests for production of documents, and a request for admissions. In response, Stone made several objections. For example, she objected to providing information regarding other Smith Barney employees and to identifying accounts or clients that were added to or removed from her assets under management during the last seven years. Relying on Colorado case law, Stone also refused to provide information regarding any deductions on her federal tax returns for business expenses from 1999 through 2005. In addition, she objected to State Farm's request for production of copies of her federal and state income tax returns for the last seven years (including 2006), documents prepared by Smith Barney over the last five years reflecting the manner in which Stone's compensation is calculated, and signed and notarized originals of "authorizations for release of [Stone's] medical, employment, academic, pharmaceutical, in-

---

1. Despite this assertion, Stone did not seek wage loss benefits available to her under the Personal Injury Protection ("PIP") coverage of her State Farm policy.

2. Stone underwent surgery to remove a meningioma, or brain tumor, which was unrelated to the automobile accident.

come taxes, Workers' Compensation, PIP, and insurance records."

State Farm then filed a motion to compel discovery, asking the court to order Stone to provide additional answers to the interrogatories and to produce the requested documents. Particularly with regard to the tax returns at the heart of this original proceeding, State Farm alleged that such records were necessary to evaluate Stone's claim for loss of income because the W–2 statements, which Stone had previously given to the State Farm adjuster, did not contain sufficient information as to how Stone is compensated.[3] Both parties acknowledge that, as First Vice President of Investments for Smith Barney, Stone is paid neither an hourly wage nor a regular annual salary set at the beginning of the year; rather, her income is based on assets under her management and can vary depending on changes in the financial market. Thus, State Farm argues that the W–2 statements do not provide a clear explanation as to whether changes in Stone's income are the result of her inability to work due to injuries sustained in the accident or a consequence of unrelated conditions in the financial market in which she works. In order to adequately evaluate Stone's claim, State Farm explained that it requires information on Stone's co-workers, her accounts/clients, and her business expenses.

Stone responded to the motion to compel discovery and moved for a protective order within that response. Citing to Colorado law, she asserted that tax records are confidential and should be protected from discovery absent a showing of compelling need. Stone alleged that State Farm had not demonstrated such a need and was merely going on a "fishing expedition" into her private life. In its reply and response to Stone's motion for a protective order, State Farm reiterated that the W–2 statements were insufficient to evaluate whether Stone experienced any loss of income due to injuries sustained in the

accident. According to State Farm, this constituted a compelling need for the tax records. State Farm alleged that balancing the strong interest in favor of discovery against any confidentiality interest of Stone compelled the conclusion that the information was discoverable.

The trial court issued a combined order regarding State Farm's motion to compel and Stone's motion for a protective order. The court required Stone to provide information related to those in her office who either perform a similar job or who have provided her with support services. It also mandated disclosure of information relating to the clients and accounts that have been added to or removed from Stone's assets under management during the last seven years, redacting all identifying information. Most importantly for purposes of this original proceeding, the court denied Stone's motion for protective order in part and required her, within ten days, to execute authorizations for the release of her federal and state income tax returns. In making this ruling, the court stated, "The Court finds that under the specific facts of this case, and based upon [State Farm's] Reply, that [State Farm] has stated a compelling interest in the disclosure of the Tax Returns filed by [Stone]."

Stone filed a motion for reconsideration and clarification of the discovery order, arguing that State Farm had not satisfactorily shown a compelling need for the tax records and that the court erred in failing to apply the appropriate analysis, which Stone proposed was the three-part balancing test of *Martinelli*. Referring to Stone's motion as merely a means of delaying production of such records, State Farm filed a response, critiquing Stone's assertions. Ultimately, the trial court denied Stone's motion, stating, "This Court's Order was clear and needs no clarification."

---

**3.** One of State Farm's interrogatories asked Stone to describe how her income or salary is computed. She responded, "See Plaintiff's demand and Rule 26(a)(1) disclosures. Additionally, please see the tax information previously provided to the State Farm adjuster." The only

information contained in Plaintiff's demand, Rule 26(a)(1) disclosures, and the tax information previously provided to the State Farm adjuster is copies of Stone's W–2 statements for several years.

From that denial, Stone petitioned this court for review under C.A.R. 21. We issued a rule to show cause. Finding that the trial court did not conduct the proper analysis in finding that State Farm presented a compelling need for the tax returns, particularly in light of less intrusive alternatives for discovery, we now make our rule absolute. We vacate the portion of the trial court's order mandating the disclosure of Stone's tax records, and remand this case for further proceedings consistent with this opinion.

### III. Analysis

Under C.A.R. 21, we have original jurisdiction to review whether a trial court abused its discretion "when no other adequate remedy, including relief available by appeal or under C.R.C.P. 106, is available." *See* C.A.R. 21; *see also Weil v. Dillon Cos.,* 109 P.3d 127, 129 (Colo.2005). While discovery orders are generally interlocutory in nature and thus not reviewable, this court has "not been reluctant to exercise that original jurisdiction when an order, otherwise interlocutory in character, will place a party at a significant disadvantage in litigating the merits of the controversy." *See Morgan v. Genesee Co.,* 86 P.3d 388, 391 (Colo.2004) (quoting *Sanchez v. Dist. Court,* 624 P.2d 1314, 1316–17 (Colo.1981)). In the current case, the trial court compelled discovery of Stone's tax returns—requiring her to produce confidential information—without first conducting the proper analysis. Thus, we exercise our original jurisdiction and make the rule absolute.

In reaching this conclusion, we begin by discussing the competing interests of liberal discovery and the confidentiality of tax returns. Then, we address the three-prong discovery test previously established in *Martinelli,* which Stone argues the trial court should have applied here. We distinguish *Martinelli* both factually and legally from the case at hand, and instead consider the analysis utilized in *Alcon,* a case similar to the one now before us. Finally, we affirm the principles of *Alcon,* incorporate that analysis into a workable test for cases involving the discovery of tax returns, and apply it to the current case.

### A. Competing Interests: Liberal Discovery and the Confidentiality of Tax Returns

In deciding discovery disputes, we have long held that the rules of civil procedure should be construed liberally so as "to effectuate the full extent of their truth-seeking purpose." *Corbetta v. Albertson's, Inc.,* 975 P.2d 718, 720 (Colo.1999). This liberal construction is intended "to eliminate surprise at trial, discover relevant evidence, simplify issues, and promote the expeditious settlement of cases." *Morgan,* 86 P.3d at 394 (quoting *Silva v. Basin W., Inc.,* 47 P.3d 1184, 1188 (Colo.2002)). In accordance with these principles, it is within the discretion of the trial court to decide motions to compel discovery, and these rulings should be upheld on appeal absent an abuse of discretion. *Corbetta,* 975 P.2d at 720.

C.R.C.P. 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The broad scope of discovery, however, does not equate to an open door for all available information. Indeed, "relevancy is not the end of the inquiry," particularly where a party opposes discovery on the ground that it would violate the right to confidentiality. *See Corbetta,* 975 P.2d at 720.

The right to privacy, or the right to confidentiality as it is sometimes referenced, "protects 'the individual interest in avoiding disclosure of personal matters.'" *Id.* (quoting *Whalen v. Roe,* 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). It includes "the power to control what we shall reveal about our intimate selves, to whom, and for what purpose." *Martinelli,* 199 Colo. at 173–74, 612 P.2d at 1091 (internal quotation and citation omitted). Discovery requests seeking confidential material require a trial court to balance an individual's right to keep personal information private with the general policy in favor of broad disclosure. *Cf. Losavio v. Robb,* 195 Colo. 533, 538, 579 P.2d 1152, 1156 (1978) (discussing balancing of interests

where the grand jury issued a subpoena duces tecum to the department of revenue seeking the production of state tax returns for several individuals and corporations).

This court has previously found that, while not privileged, tax returns are confidential. *Alcon,* 113 P.3d at 737. Section 39–21–113(4)(a), C.R.S. (2007), bans the department of revenue and its agents from divulging any information obtained during the course of an investigation or disclosed in an individual's tax returns, "[e]xcept in accordance with judicial order or as otherwise provided by law." *Alcon,* 113 P.3d at 742–43. In *Losavio,* we recognized that this statute evinces "a strong public policy of protecting the confidentiality of taxpayers' state income tax returns." 195 Colo. at 539, 579 P.2d at 1156. Later, in *Alcon,* we explained that this policy not only applies in cases where a party seeks disclosure of tax returns from the department of revenue, but also in cases—such as the one now before us—where one party requests tax returns directly from the other party. *See* 113 P.3d at 743. Similarly, federal case law has clearly created a "policy favoring confidentiality of federal tax returns by prohibiting the disclosure of returns except under certain circumstances." *Id.; see, e.g., A. Farber & Partners, Inc. v. Garber,* 234 F.R.D. 186, 190–91 (C.D.Cal.2006) (noting that there is a "public policy against unnecessary public disclosure").[4]

This general reluctance of courts to compel the disclosure of tax returns is due to "both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.' " *Carmody v. Vill. of Rockville Ctr.,* No. CV–05–4907, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007) (quoting *Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y.1979)). Aside from disclosing income, tax returns typically contain "information about the taxpayer's marital status, dependents, business dealings, investments, religious affiliations, charitable inclinations, property holdings, and debt obligations." William A. Edmunson, *Discovery*

*of Federal Income Tax Returns and the New 'Qualified' Privileges,* 1984 Duke L.J. 938, 938. Indeed, a tax return reveals "the skeletal outline of [a taxpayer's] personal and financial life." *Id.* at 938 n. 2. It is because of the high level of confidential material contained within tax returns that we provide additional protection to these documents, requiring those seeking such information to satisfy more than just a mere test of relevance before discovery will be permitted.

### B. Distinguishing the Three–Prong *Martinelli* Test

In her petition before this court, Stone argues that the trial court abused its discretion by compelling her to sign tax record authorizations without applying the three-prong balancing test of *Martinelli.* We now examine the *Martinelli* test and reject its applicability in the context of the discovery of tax returns.

In *Martinelli,* this court considered whether a party could discover personnel files and staff investigation bureau reports maintained by the Denver Police Department. 199 Colo. at 167, 612 P.2d at 1086. Claiming police misconduct during his arrest, the plaintiff brought a multi-claim civil action against the department, its officers, and the City and County of Denver. *Id.* After reviewing the files and reports in camera, the trial court in that case entered an order granting the motion to compel discovery. *Id.* at 168, 612 P.2d at 1087. In the original proceeding before this court, the department, the officers and the City and County of Denver claimed that the materials were irrelevant and privileged. *Id.* at 168–173, 612 P.2d at 1087–91. They also argued that disclosure of the files would violate various state and federal statutes, as well as the officers' right to confidentiality. *Id.* at 173–79, 612 P.2d at 1091–95.

Recognizing the competing interests involved—the officers' desire to keep the information private and the state's interest in

---

4. Some federal courts have gone so far as to characterize the additional protection afforded tax returns as a qualified privilege. *See, e.g., Gattegno v. Pricewaterhousecoopers, LLP,* 205 F.R.D. 70, 72 (D.Conn.2001). While we recognize that tax records are confidential in nature, and thus worthy of further protection, we do not classify such documents as privileged.

"facilitating the ascertainment of truth in connection with legal proceedings"—we held that a trial court must undertake a balancing test when a party invokes the right to confidentiality to bar disclosure of personal information. *Id.* at 174–75, 612 P.2d at 1091–92. We defined the three-prong inquiry as follows:

(1) does the party seeking to come within the protection of [the] right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?

(2) is disclosure nonetheless required to serve a compelling state interest?

(3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

*Id.* at 174, 612 P.2d at 1091. Because it was not clear from the trial court's order in that case whether it engaged in the necessary balancing analysis, we instructed the court to conduct an in camera examination of the files and reports and make specific findings with regard to the three-prong inquiry. *Id.* at 175, 612 P.2d at 1092.

Since *Martinelli,* this court has continued to apply the balancing test in similar cases, particularly those involving the discovery of personnel files. *See, e.g., Corbetta,* 975 P.2d at 720–21 (directing the trial court to conduct an in camera examination of employee personnel files in order to make specific findings regarding the *Martinelli* test); *cf. Williams v. Dist. Court,* 866 P.2d 908, 912–13 (Colo. 1993) (finding an abuse of discretion where, without first applying the balancing test, the trial court compelled the plaintiff to answer interrogatories concerning his sexual history). Stone now argues that because tax returns are confidential documents, the trial court should have applied the three-prong *Martinelli* analysis to the facts of this case. State Farm, on the other hand, claims that the trial court appropriately granted its motion to compel discovery by applying this court's compelling need analysis in *Alcon.* More specifically, State Farm argues that in *Alcon* this court analyzed the appropriateness of the discovery of tax returns without addressing the *Martinelli* test, and that if this court had intended to adopt a rule re-

quiring trial courts to conduct the three-part inquiry with regard to tax returns, it could have done so in that case.

We now recognize the limited applicability of the *Martinelli* test and instead, consider the appropriateness of employing the *Alcon* analysis in cases involving the discovery of tax returns.

## C. Discovery Analysis in *Alcon v. Spicer*

Previously, in *Alcon,* we examined the basic legal issue now before us: whether a trial court can compel the discovery of an individual's tax returns. The facts in *Alcon* are analogous to the current action. In that case, Alcon filed a personal injury suit against Spicer, arising from a car accident. *Alcon,* 113 P.3d at 737. As part of that action, Alcon sought damages for loss of past and future earnings and earning potential. *Id.* Although Alcon provided Spicer with W–2 statements from her employment at King Soopers, she refused to produce copies of her tax returns from the prior ten years. *Id.* The trial court reasoned that Alcon's earning history was relevant to her asserted wage loss claim, and thus ordered her to disclose the documents. *Id.* at 738. In an original proceeding before this court, Alcon argued that due to the confidential nature of tax returns, Spicer was required to demonstrate a compelling need for the information in the returns before she could be ordered to disclose them. *Id.* at 743. Spicer, on the other hand, claimed that he needed a "complete picture" of Alcon's income as presented in her tax returns in order to properly defend against her claim for lost earnings. *Id.*

In reviewing these arguments, we first emphasized the "strong policy in favor of protecting the confidentiality of tax returns," as discussed above. *Id.* at 742–43. Then, we looked to our decision in *Losavio,* where we affirmed a trial court's order quashing a grand jury's subpoena duces tecum, which had required the department of revenue to produce state tax returns for two individuals and six corporations. *Id.* at 743. Relying on the analysis in *Losavio,* we held in *Alcon* that "the party seeking release of a tax return bears the burden of showing a 'compelling need' for the return. Absent a compelling

need, a subpoena for a tax return should be quashed." *Id.* (internal citation omitted). We explained that our opinion in *Losavio* "did not condition the compelling need requirement on the involvement of a grand jury or the department of revenue"; thus, the analysis could be extended to the situation in *Alcon.* *Id.*

Ultimately, we held that Spicer had not demonstrated a compelling need for the information in Alcon's returns. *Id.* Alcon's claim for lost earnings was based upon her wages from employment at King Soopers. *Id.* Spicer could defend against this claim using the information found in the previously disclosed W–2 statements. *Id.* Moreover, we held that Spicer did not need a "complete picture" of Alcon's income as provided by her tax returns; the W–2 statements were sufficient. *Id.* Finding that the trial court abused its discretion by ordering disclosure of the returns without a showing of compelling need, we vacated the trial court's discovery ruling. *Id.*

Here, in its brief to this court, State Farm argues that the trial court properly considered its motion to compel under the compelling-need analysis of *Alcon,* rather than the three-part inquiry of *Martinelli.* Although we recognize that both of these analyses address the protection of an individual's right to confidentiality, we agree with State Farm that the *Alcon* analysis is the more appropriate balancing test in the current context.

■ The first prong of *Martinelli*—whether the party seeking protection has a legitimate expectation that the information will not be disclosed—is wholly unnecessary in cases such as *Alcon* due to Colorado's general policy in favor of protecting tax returns. Tax returns, by their very nature, would satisfy this initial inquiry. *See Alcon,* 113 P.3d at 742–43. Unlike in *Martinelli,* there is no need to determine whether the information sought to be protected is "highly personal and sensitive" and whether disclosure

"would be offensive and objectionable to a reasonable person of ordinary sensibilities."[5] *See Martinelli,* 199 Colo. at 174, 612 P.2d at 1091.

Moreover, in *Martinelli,* the dispute concerned the discovery of personnel files maintained by a government entity, the Denver Police Department. *Id.* at 167, 612 P.2d at 1086. Consideration of a compelling *state* interest (i.e., the second prong of *Martinelli* ) was therefore logical under the facts of that case. It has little or no applicability, however, in a case where a private party is seeking the disclosure of another private party's tax returns.

Contrasting the case at hand, the test in *Martinelli* is most appropriate in cases where the three prongs are at issue: those involving a state interest or seeking discovery of materials that may or may not violate an individual's legitimate expectation of confidentiality. In *Martinelli,* this court weighed the competing interests, including the plaintiff's need to prove his case, the officers' interests in protecting the information contained in their personnel files, the general public's need to know how their government (i.e., the police department) was functioning, and Denver's interest as an employer in managing its employees. Unlike tax returns where an individual submits financial information required by specific forms and arguably knows what the returns contain, personnel files are prepared and maintained by the employer and the individual employee may or may not know what information is likely to be included. Because *Martinelli* is factually and legally distinguishable from both *Alcon* and the case before us today, we reject Stone's argument that the three-pronged analysis should have been applied by the trial court. Instead, we reaffirm the balancing of interests presented in *Alcon,* and clarify the proper analysis for cases involving the discovery of tax returns.

---

5. Tax returns are communications between a taxpayer and the department of revenue. *Fort Wash. Res., Inc. v. Tannen,* 153 F.R.D. 78, 80 (E.D.Pa.1994). While a typical taxpayer discloses personal information as means of completing his or her returns, he or she does not intend to disclose this information to the general public. Thus, we need not consider in each case where the discovery of tax returns is at issue whether the taxpayer had a legitimate expectation of confidentiality.

## D. The Test for Discovering Tax Returns

Today, we reaffirm *Alcon's* principles and restate its test. We recognize that the concepts of compelling need and least intrusive alternative depend on the specific facts and circumstances of the case at hand, and thus, are essential to the discovery analysis.[6] In addition to these two factors, we add a consideration of relevancy as a basic premise of discovery.

 We now hold that, because of their confidential nature, tax returns may not be ordered disclosed unless a court finds that they are relevant to the subject of the action and that there is a compelling need for information contained in the returns because the information sought is not otherwise readily obtainable.[7] The burden lies with the party seeking discovery to show relevancy and to demonstrate a compelling need for the specific information contained within the requested documents. In responding to the discovery requests, the party opposing discovery can point to other available sources from which the information can be readily obtained.[8] In considering these factors, a trial court may conduct an in camera examination of the requested returns and the possible alternative sources of information. If a court determines that a compelling need for the returns does exist, the court should focus on the specific information that the party requesting discovery is actually seeking, and limit the permitted discovery to the necessary materials—by, for example, redacting irrelevant information—as opposed to ordering blanket disclosure of the entire returns. Disclosure should be at most no broader than what the party seeks. A court engaging in this analysis should keep in mind Colorado's strong policy in favor of nondisclosure of tax returns. *See Alcon,* 113 P.3d at 743.

Now that we have clarified the appropriate test for evaluating State Farm's motion to compel disclosure of Stone's tax returns, we

6. Although indirectly, we recognized this concept of least intrusive alternative in *Alcon v. Spicer* when we noted that the information necessary for Spicer to defend against Alcon's wage loss claim could be obtained from the previously provided W–2 statements, without the production of the actual tax returns. *See* 113 P.3d 735, 743 (Colo.2005). These W–2 statements were the least intrusive sources of the information in that case. *Alcon,* however, does not stand for the principle that where a plaintiff produces W–2 statements, the defendant is precluded from discovering the plaintiff's income tax returns as a matter of law. Rather, the existence of compelling need for the production of tax returns must be considered in light of the particular circumstances of each case.

7. Federal and state judiciaries alike have acknowledged the confidential nature of tax returns and attempted to provide additional protection in the realm of discovery. Many federal courts, as well as a few state courts, have adopted a balancing test similar to the one we now establish. *See, e.g., Hawkins v. S. Plains Int'l Trucks,* 139 F.R.D. 679, 681–82 (D.Colo.1991) (holding that a court should not order the production of tax returns unless it finds that 1) "the returns are relevant to the subject matter of the action; and 2) there is a compelling need for the tax returns, because the information is not otherwise readily obtainable"); *see also Carmody v. Vill. of Rockville Ctr.,* No. CV–05–4907, 2007 WL 2042807, at *2 (E.D.N.Y. July 13, 2007); *Johnson v. Kraft Foods N. Am., Inc.,* 236 F.R.D. 535, 539 (D.Kan.2006); *Ronald C. Fish v. Watkins,* No.

CIV030067PHXSMM, 2006 WL 411302, at *2 (D.Ariz. Feb.17, 2006); *Gattegno,* 205 F.R.D. at 71–72; *Horwath v. Brownmiller,* 51 Pa. D. & C.4th 33, 43 (Pa.Com.Pl.2001); *cf. Ullmann v. Hartford Fire Ins. Co.,* 87 N.J.Super. 409, 209 A.2d 651, 654 (App.Div.1965) (requiring showing of good cause, but referencing generally the compelling need and relevancy test); *In re Sullivan,* 214 S.W.3d 622, 624–25 (Tex.App.2006) (requiring showing of relevance and materiality and stating that returns are not considered material "if the same information can be obtained from another source").

8. Courts have applied the test for the discovery of tax returns with differing burdens of proof. *Carmody,* 2007 WL 2042807 at *2. The federal court in *Carmody* noted that the "modern trend appears to require the party seeking discovery to demonstrate both relevancy and a compelling need." *Id.* This trend does not negate the relevance of alternative sources of the information. *Id.* at *3. In *Carmody,* the court explained that the plaintiff's counsel did not suggest alternative sources for the information, but the plaintiff did produce W–2 statements, as well as an unemployment earning statement. *Id.* Considering these alternatives, the court ultimately found that the defendant did not satisfy the compelling need prong of the test; thus, the motion to compel was denied. *Id.* We adopt a similar approach here, requiring the party seeking discovery to prove relevancy and compelling need, while evaluating the opposing party's claims of less intrusive sources.

consider its application to the particular facts in the record before us.

### E. Application to the Current Case

In its order granting State Farm's motion to compel, the trial court stated, "The Court finds that under the specific facts of this case, and based upon [State Farm's] Reply, that [State Farm] has stated a compelling interest in the disclosure of the Tax returns filed by [Stone]." Stone argues that this finding suggests that the court did not apply the appropriate factors in reaching its decision. Further, Stone claims that the lower court committed reversible error by failing to identify State Farm's "compelling interest." Stone contends that, because the information can be obtained through less intrusive means, State Farm does not have a compelling need for the returns.

 It is difficult to discern from the brief findings of the trial court whether the court weighed the concerns presented in *Alcon.* Under the test we clarify today, we first look to the initial prong of relevance. Here, Stone sought damages in the form of past and future loss of earnings and earning capacity. She has put her income at issue in the case, and therefore, tax returns containing information regarding her income are relevant.

Next, we consider whether State Farm satisfied its burden of showing compelling need. In its reply, on which the trial court specifically relied in making its finding, State Farm argued that, unlike in *Alcon* where the plaintiff was paid an hourly wage, in the current case, Stone's income is based on assets under her management. While in *Alcon* all of the information relevant to the plaintiff's wage loss claim could be found in the plaintiff's W–2 statements, here, State Farm alleges that Stone's W–2 statements do not provide sufficient information to determine whether any loss of income is due to injuries caused by the accident or due to other factors, such as changes in the market, business expenses, and changes in her accounts or clients. In other words, due to the complicated nature of Stone's income calculation, State Farm contends that it needs Stone's tax returns to defend against her

wage loss claim. More particularly, State Farm seeks to compare Stone's deductions for business expenses on her tax returns both before and after the accident to determine whether she maintained the same level of activity. State Farm does not specifically mention any other type of information that the tax returns are likely to contain, which could be relevant to its defense against Stone's claims. Presumably, the trial court's ruling regarding the discovery of the returns was based on these arguments. However, it did not limit the scope of its disclosure order to specific information, such as business expense deductions, contained in the tax returns.

Stone, on the other hand, contends that State Farm could not have met its burden of showing compelling need because the desired information was readily obtainable from less intrusive sources. In both her reply regarding her motion for reconsideration of the trial court's order and her reply brief to this court, Stone explains that information on stock market conditions is readily available to the public by means of various indices. In addition, she asserts that State Farm could learn about her business expenses by acquiring her business expense reports from her employer, Smith Barney. Stone also alleges that State Farm could depose her co-workers to determine how much she worked following the accident. Further, Stone states in her reply brief that, after this court's ruling but prior to the expert disclosure deadline, she provided State Farm with a lost earnings report prepared by Dr. James Evenson, which detailed her wage loss claim. Because less intrusive methods of obtaining the information exist, Stone concludes that the trial court erred in granting State Farm's motion to compel. While State Farm has continuously asserted that Stone's W–2 statements are insufficient to allow it to defend against Stone's claims, State Farm does not address or attempt to evaluate—at least in the record before us—the other possible sources of information proposed by Stone.

 The record before us now on appeal is limited. The court's order is overbroad, requiring disclosure of the entire tax returns without limitation. In addition, there

is no indication from the trial court's order that the court considered alternative sources of information in rendering its finding of compelling need. Consequently, we find that the trial court abused its discretion. We make our rule to show cause absolute and remand the case with directions to apply the test we have laid out in this opinion. In doing so, the court should focus on the information that State Farm believes it can obtain from the tax returns—deductions for business expenses—and consider whether less intrusive sources of this specific information exist.[9] If State Farm proves that there is a compelling need for the returns because the information sought is not otherwise readily obtainable, the court should limit discovery to those portions of the tax returns relevant and necessary to State Farm's defense against Stone's wage loss claims.

## IV. Conclusion

Recognizing that tax returns are confidential in nature, today we clarify the appropriate test that a trial court must apply before requiring disclosure of such documents. A court must find that the returns are relevant to the subject matter of the case, and that there is a compelling need for the returns because the information contained in the returns is not otherwise readily obtainable. Because the record before us does not show that the trial court engaged in the proper analysis, we find that the court abused its discretion in ordering Stone to execute authorizations for the release of her tax returns. Accordingly, we now make our rule to show cause absolute. In doing so, we vacate the portion of the trial court's order compelling discovery of Stone's tax records, and we return this case for proceedings consistent with this opinion.

---

**9.** We do not now rule on whether the sources proposed by Stone are sufficient to satisfy State Farm's requests for information. We note that these sources are merely a factor for the trial court to consider in making its discovery ruling.